# IN THE CIRCUIT COURT FOR BRADLEY COUNTY, TENNESSEE

ART G. ELLIS                    )
                                )
    Plaintiff,                  )
                                )
v.                              )        Docket No. V-13-376
                                )
NATIONWIDE MUT. INS. CO.,       )        Judge Puckett
                                )
    Defendant                   )

## MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

Comes now plaintiff Art G. Ellis, through counsel, and pursuant to Rules 15.01 of the Tennessee Rules of Civil Procedure moves this Court for leave to file an Amended Complaint in the form of Exhibit A to this Motion asserting additional claims arising from the transaction at issue in the matter appealed from the General Sessions Court for Bradley County, Tennessee, and increasing his *ad damnum* beyond the jurisdictional limit of that Court.

Submitted,

FLEISSNER DAVIS AND JOHNSON

By: _____

C. SCOTT JOHNSON
Tenn. BPR No. 019810
PATRICK B. HAWLEY
Tenn. BPR No. 028264
*Attorneys for Art G. Ellis*
600 Georgia Avenue, Suite One
Chattanooga, TN 37402
Phone: (423) 756-3591
Fax:   (423) 266-5455



EXHIBIT
B

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing *Motion for Leave to file Amended Complaint* has been served by U.S. Mail pursuant to Tenn. R. Civ. P. 5.02 on counsel below this 17th day of October, 2014.

Andrew J. Lewis, BPR #028090
*Attorney for Nationwide Mut. Ins. Co.*
P.O. Box 51450
Knoxville, TN 37950
(865) 330-2577 (phone)
(865) 330-2578 (fax)
andrewlewis@tawpc.com

By: _____
C. SCOTT JOHNSON
PATRICK B. HAWLEY

2

# IN THE CIRCUIT COURT FOR BRADLEY COUNTY, TENNESSEE

| | | |
|---|---|---|
| **ART G. ELLIS** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Docket No. V-13-376** |
| | ) | |
| **NATIONWIDE MUT. INS. CO.,** | ) | **Judge Puckett** |
| | ) | |
| **Defendant** | ) | |

## AMENDED COMPLAINT

Comes now plaintiff Art G. Ellis, through counsel, and amends the allegations of the Civil Warrant filed with the General Sessions Court for Bradley County, Tennessee as follows:

1. Mr. Ellis is, and at all relevant times was, a resident of Bradley County, Tennessee;

2. Defendant Nationwide Mutual Insurance Company is a foreign mutual insurance company organized under the laws of the State of Ohio and registered with the Tennessee Commissioner of Insurance as headquartered at One West Nationwide Blvd., Columbus, OH 43215, with offices at 2908 Poston Avenue, Nashville, TN 37203. The Defendant is not registered with Tennessee's Secretary of State, and has not registered an agent for service of process in the State of Tennessee; the Defendant may therefore be served with process through the Tennessee Commissioner of Insurance pursuant to Tennessee Code Annotated § 56-2-503.

3. Mr. Ellis is the record owner of a piece of real property located at 2340 Dalton Pike, SE, in Cleveland, Tennessee (the "Insured Property") in which Mr. Ellis formerly operated both a video rental store and a restaurant.

4. At all relevant times a commercial building (the "Building") was situated on the Insured Property, as were a four ton HVAC unit and a four ton heat pump (the "Units"), each

**EXHIBIT**

**A**

situated outside of the Building, and a freestanding refrigeration unit (the "Cooler") also located outside of the Building;

5.     In 2004 or 2005, Mr. Ellis submitted an application for a policy of insurance to Nationwide by delivering that application to Jim Suiter at American Insurance Managers, a licensed insurance producer authorized to accept applications for and negotiate contracts for insurance on behalf of Nationwide, and therefore Nationwide's agent by operation of <u>Tennessee Code Annotated</u> § 56–6–115(b).

6.     Mr. Ellis has timely paid his premium annually since the Policy was first issued, and coverage has never lapsed.

7.     Years prior to submitting his application for the Policy, Mr. Ellis had been robbed at gunpoint on the street near the Insured Property, and thereafter had an alarm system installed on the Building to detect any attempted unauthorized or forcible entry into the Building.

8.     Some time in 2005, Mr. Ellis sold his interests in the video rental and restaurant businesses operated in the Building on the Insured Property to Jim and Heidi Baum, but retained ownership of the Insured Property and continued to pay premiums on the Policy.

9.     The Baums thereafter occupied the Building on the Insured Property as Mr. Ellis' tenants; as Mr. Ellis' tenants, the Baums assumed responsibility for maintaining the alarm system that Mr. Ellis had previously installed.

10.     The Baums vacated the premises at the end of 2010.

11.     Mr. Ellis thereafter leased the Building to John Sanders, who used the building continuously through September 9, 2012 to store items accumulated for auction and to conduct auctions of those items he had stored in the Building, purposes customary to the conduct of Mr. Sanders' operations as an auctioneer.

2

12.     On September 9, 2012, (the "Date of Loss"), Mr. Ellis discovered that the Units had been stolen from the Insured Property outside the Building, and that the Cooler outside the Building on the Insured Property had been effectively destroyed by the thieves.

13.     Mr. Ellis inspected the Building immediately after the theft.

14.     No property was missing from inside the Building and he building was undamaged with all doors and windows intact.

15.     There is no evidence that the thieves made any attempt to enter into the building.

16.     Mr. Ellis reported the theft and destruction of his property to local law enforcement on the Date of Loss, and made a claim to Nationwide on September 11, 2012.

17.     Mr. Ellis had never previously made a claim under the Policy.

18.     On the Date of Loss, the Insured Property was insured under "Premier Businessowners Policy" Number ACP BPR 7162082494 (the "Policy") issued by the Defendant, Nationwide Mutual Insurance Company, a copy of which is attached hereto—in the form in force from January 3, 2012 to September 24, 2012—as Exhibit A.[1]

19.     The ninety-two (92) page Policy consists of: (1) Common Declarations that name Mr. Ellis as the insured, (2) Liability Declarations; (3) Property Declarations that describe 2340 Dalton Pike SE as the Insured Property; (4) a Property Coverage Form; (5) a Liability Coverage Form; (6) separate Common Policy Conditions (the "Conditions"); and (7) various separate notices and endorsements, including endorsement PB 04 30 04 11 entitled "Protective Safeguards".

---

[1] The "Policy", including declarations, coverage parts, conditions, endorsements and notices, are separately paginated documents but, as attached, have been bates-stamped to accommodate citations within this document and easy cross-reference from this document to Exhibit A.

20.     The Common Declarations describe the "Policy Period" as "Effective From 01-03-12 To 01-03-13 12:01 AM Standard Time at your principal place of business" and identify Art Ellis as insured. (Policy 1.)

21.     The Property Declarations identify the "Premises Address" as 2340 Dalton Pike SE, Cleveland, TN 37323. (Policy 4.)

22.     The "Coverages" section of the Property Declaration describes "Building" coverage as providing coverage at "replacement cost" to a limit of two hundred twenty-one thousand five hundred and 00/100 dollars ($221,500.00) subject to a deductible of one thousand and 00/100 dollars ($1,000.00), and "Business Personal Property" coverage as "not provided" under the Policy. (Policy 4.)

23.     The Property Declarations also bear a notation, at the bottom of the page, which reads:

**PROTECTIVE SAFEGUARDS**

This premise has Protective Safeguards identified by symbols below. Insurance for Fire or Burglary and Robbery at this premise will be excluded if you do not notify us immediately if any of these safeguards are impaired.

See PB 04 30 for a description of each symbol. APPLICABLE SYMBOLS: P-2; P-6;

(Policy 4.) *See* ¶ 35 below, quoting the applicable portions of PB 04 30 04 11.

24.     PB 04 30 was not a part of the Policy when first issued to Mr. Ellis, Mr. Ellis did not subsequently request that PB 04 30 be added to the Policy or bargain for any reduction in premium in exchange for the reduction in coverage effected by PB 04 30, and Nationwide never notified Mr. Ellis that PB 04 30 had been added to the Policy.

25.     The preamble of the Property Coverage Form provides that:

Various provisions in this policy restrict coverage. Please read the entire policy carefully to determine rights, duties and what is and is not covered.

4

Throughout this policy the words "you" and "your" refer to the Named Insureds shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance. *Other words and phrases that appear in quotation marks have special meaning. Please refer to Section H. PROPERTY DEFINITIONS.*

(Policy 10, emphasis added to italicized portion.) *See* ¶¶ 31-33 below, regarding Section H.

26. That part of the Property Coverage Form which sets forth the insuring agreement between Mr. Ellis and Nationwide and defines the outer boundary of coverage under the Policy provides that:

### A. COVERAGES

We will pay for direct physical loss of or damage to Covered Property at the described premises in the Declarations caused by or resulting from any Covered Cause of Loss.

### 1. COVERED PROPERTY

Covered Property includes Buildings as described under paragraph a. below, Business Personal Property as described under paragraph b. below, or both, depending on whether a Limit of Insurance is shown in the Declarations for that type of property. Regardless of whether coverage is shown in the Declarations for Buildings, Business Personal Property, or both, there is no coverage for property described under paragraph 2, PROPERTY NOT COVERED.

    a. **Buildings,** meaning the described buildings and structures at the described premises, including:

        (1) Completed additions;

        *(2) Fixtures, including outdoor fixtures;*

        *(3) Permanently installed:*

            *(a) Machinery;*

            *(b) Equipment*; and

            (c) Tanks, including pumps;

        (4) Your personal property in apartments, rooms or common areas furnished by you as landlord;

        (5) Personal property owned by you that is used to maintain or service buildings or structures or the premises, including:

            (a) Fire extinguishing equipment;

            (b) Outdoor furniture;

            (c) Floor coverings;

5

> **(d)** *Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering*; and
>
> **(e)** Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, mast and towers;
>
> (6) If not covered by other insurance:
>
> **(a)** Additions under construction, alterations and repairs to the buildings or structures;
>
> **(b)** Materials, equipment, supplies and temporary structures, on or within 1,000 feet of the described premises, used for making additions, alterations or repairs to the buildings or structures; and
>
> (7) Garages, storage buildings, spas, swimming pools, fences, retaining walls or other appurtenant structures usual to your business, but only if:
>
> **(a)** Coverage is not provided for such structures under the Appurtenant Structures Additional Coverage; and
>
> **(b)** Such structures are then described in the Declarations.

(Policy 10, emphasis added to italicized portions.)

27.     Section A.3. of the Property Coverage Form, entitled "Covered Causes of Loss", provides:

> **3. COVERED CAUSES OF LOSS**
>
> This Coverage Form insures against Risks Of Direct Physical Loss unless the loss is:
>
> a.  Excluded in Section B. EXCLUSIONS;
>
> b.  Limited in paragraph A.4. LIMITATIONS in this section; or
>
> c.  Limited or excluded in Section E. PROPERTY LOSS CONDITIONS or Section F. PROPERTY GENERAL CONDITIONS.

(Policy 11.)

28.     Neither the theft of outdoor fixtures located on the Insured Property nor the destruction, occasioned by attempted theft, of outdoor fixtures located on the Insured Property are causes of loss excluded by Section B., nor causes of loss limited by Sections A.4. and E.

6

29.    Section E. of the Property Coverage form consists of "Property Loss Conditions"

and, at subsection 8., regarding "Vacancy", provides:

a. **Description Of Terms**

(1) As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in (1)(a) and (1)(b) below:

(a) When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

(b) When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

(i) Rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations; and/or

(ii) Used by the building owner to conduct customary operations.

(2) Buildings under construction or renovation are not considered vacant.

b. **Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

(1) We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

(a) Vandalism;

(b) Sprinkler leakage, unless you have protected the system against freezing;

(c) Building glass breakage;

(d) Water damage, including damage that is caused by or resulting from freezing;

(e) Theft; or

(f) Attempted theft.

(2) With respect to Covered Causes of Loss other than those listed in paragraphs (1)(a) through (1)(f) above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

(Policy 35-36.)

7

30.     Section E.8.a.(1)(b) of the Policy defines the term "building" with the tautology "building means the entire building", even then limiting the application of that definition to occurrences of the term "in this Vacancy Condition".

31.     Section H. of the Property Coverage Form, entitled "Property Definitions", provides that, "The terms "you", "your", "we", "us", "our" and "insured" are defined in the Preamble of this Coverage Form." (Policy 41.)

32.     Section H. further sets forth the definitions of certain "words or phrases[] which appear in quotation marks throughout this Coverage Form and . . . its endorsements". (Policy 41.)

33.     Section H. of the Property Coverage Form specifically defines the terms "Accident", "Actual Cash Value", "Business Income", "Computer", "Counterfeit Money", "Covered equipment", "Dependent property", "Electronic data", "Extra Expense", "Fraudulent instruction", "Fungi", "Hazardous substance", "Manager", "Member", "Money", "Operations", "Ordinary payroll expenses", "Period of restoration", "Perishable goods", "Pollutants", "Securities", "Specified Causes of Loss", "Stock", "Transfer account", and "Valuable papers and records". (Policy 41-45.)

34.     Section H. of the Property Coverage Form does not define the terms "Building", "entire building", "customary operations", "Burglary", "Robbery", "theft", or "local burglar alarm".

35.     Endorsement PB 04 30 0411—referred to in the Property Declarations as PB 04 30 and entitled, on the face of the endorsement, "Protective Safeguards"—provides that:

## NOTICE

**YOU RISK THE LOSS OF CERTAIN INSURANCE COVERAGE AT PREMISES DESIGNATED IN THE DECLARATIONS IF YOU FAIL TO MAINTAIN ANY OF THE APPLICABLE PROTECTIVE SAFEGUARDS, LISTED BY SYMBOL IN THE DECLARATIONS FOR EACH PREMISES.**

8

Our requirement that you maintain the protective safeguard is in consideration of a premium reduction. If you do not wish to commit to the requirements expressed in this endorsement, at our option, your insurance may be continued. However, the credit for such protection would not be applied.

Your acceptance of this policy in the payment of premium when due constitutes your understanding and acknowledgement that you risk the loss of certain insurance at the premises designated if you fail to maintain the protective safeguard and your acceptance and agreement with the terms of this endorsement.

\* \* \*

A. **CONDITION.** As a condition of this insurance, you are required to maintain the applicable protective devices or services for fire, denoted by symbols P-1, P-2, P-3, P-4, P-5, P-8, or P-9; or for burglary and robbery, denoted by symbols P-6 or P-7) [sic], as designated at each premises by symbol in the Declarations.

B. **EXCLUSIONS.** Under Section B. EXCLUSIONS, the following exclusions are added:

\* \* \*

2. **BURGLARY AND ROBBERY PROTECTIVE SAFEGUARDS**

We will not pay for loss or damage caused by or resulting from theft if, prior to the theft, you:

a. Knew or should have known of any suspension or impairment in any protective safeguard designated at each premises by symbol in the Declarations and failed to notify us of that fact; or

b. Failed to maintain any protective safeguard designated at each premises by symbol in the Declarations and over which you had control, in complete working order.

\* \* \*

C. **PROTECTIVE SAFEGUARD SYMBOLS.** The protective safeguards to which this endorsement applies are identified in the Declarations by the following symbols:

\* \* \*

**"P-6" Local Burglar Alarm** protecting the entire building which in the event of an unauthorized or attempted entry at the described premises, triggers a loud sounding gong or siren, or a visual device, on the outside of the building.

\* \* \*

(Policy 85.)

9

36. After Mr. Ellis submitted his claim to the Defendant, Anthony Lippard, employed by the Defendant as a claims adjuster, visited the Insured Property without notice to Mr. Ellis and inspected the Building without entering the Building.

37. Nationwide thereafter contacted Mr. Ellis by phone to inform him that his claim would be denied on the basis that the Building was vacant.

38. Mr. Ellis thereafter furnished the Defendant an affidavit of John Sanders setting forth the terms of the oral lease by which Mr. Sanders then occupied, and on the Date of Loss had occupied, the Building as Mr. Ellis' tenant.

39. Mr. Lippard thereafter returned to the Insured Property and, with Mr. Ellis' assistance, entered the Building; upon entering the Building with Mr. Lippard, Mr. Ellis discovered that the alarm system had been disabled.

40. On September 20, 2012, the Defendant issued a written denial of Mr. Ellis' claim, informing Mr. Ellis that his claim would be denied on the basis that the Building's alarm system was not functional.

41. Mr. Ellis replaced the Units at an out-of-pocket cost of fourteen thousand four hundred forty-one and 65/100 dollars ($14,441.65); Mr. Ellis has not replaced the Cooler, and has been wrongfully deprived of the loss of use of that property since his claim was wrongfully denied on September 20, 2012.

42. Mr. Ellis initiated this lawsuit on November 9, 2012 with a civil warrant issued from the General Sessions Court for Bradley County, Tennessee, and timely perfected his appeal to this Court.

## Count I: Breach of Contract

43.     Plaintiff re-pleads and incorporates by reference the allegations of Paragraphs 1 through 42 as if they were set forth verbatim herein.

44.     The Policy constitutes a contract for insurance between the Defendant and Mr. Ellis, obligating the Defendant to afford coverage for covered losses arising from covered causes of loss subject to specified limits on condition that Mr. Ellis timely pays his premiums and complies with other terms of the Policy by satisfying specific conditions of coverage.

45.     Mr. Ellis timely paid the premium due on the Policy, has fully complied with the applicable terms of the Policy, and has timely satisfied every applicable condition on coverage set forth in the Policy. (*See* Policy 33-41, 68-71.)

46.     Significantly, Mr. Ellis timely paid the premiums due under the Policy for more than half a decade prior to the Date of Loss, though he never made a claim under the Policy during that time, and timely reported to the Defendant the theft of the Units and the Cooler—fixtures situated outside the Building on the Insured Property—to the Defendant within three days of discovering that loss.

47.     The Units and the Cooler were outdoor fixtures, permanently installed machinery, and equipment, and property owned by Mr. Ellis and used to maintain or service the Building on the Insured Property as appliances used for refrigerating and for ventilating the Building. The Units and the Cooler were therefore covered property pursuant to Section A.1.a.(2), (3)(a)-(b), and (5)(d).

48.     The theft of the two Units and destruction occasioned by an attempt to steal the Cooler were caused by covered causes of loss pursuant to Section A.3. of the Property Coverage Form because losses arising from the theft and attempted theft from the Insured Property of

11

outdoor fixtures by persons unassociated with either the named insured or a lessee of the Insured Property are neither excluded nor limited pursuant to Sections B., A.4. and E of the Property Coverage Form.

49.     Specifically, the Building was not vacant on September 9, 2012, but rather almost entirely occupied by John Sanders, who used the Building both to store items accumulated for and to conduct auctions, conduct customary to his operations as an auctioneer; the loss was therefore not limited on account of vacancy by operation of Section E.8 of the Property Coverage Form.

50.     No other exclusions or limitations set forth at Sections B., A.4., and E of the Property Coverage Form have been cited as a basis for the Defendant's denial of Mr. Ellis' claim, and none of the exclusions or limitations set forth in those sections apply.

51.     The covered losses were not caused by a burglary because the persons responsible for the theft of the Units and destruction of the Cooler never entered the Building.

52.     The covered cause of loss was not a robbery because the persons responsible for the theft of the Units and destruction of the Cooler perpetrated their crime without either employing violence or inspiring fear in Mr. Ellis.

53.     A "local burglar alarm" protecting the "entire building" could not have prevented or interrupted "an unauthorized or attempted entry" by the persons responsible for the covered cause of loss because no attempt was made to enter the Building.

54.     The covered loss may not be excluded pursuant to endorsement PB 04 30 04 11 because, in the absence of either burglary or robbery, "Insurance for . . . Burglary and Robbery" was not implicated in connection with the loss.

55.     The Defendant has materially and totally breached its contract for insurance with Mr. Ellis by denying his claim for a covered loss arising from a covered cause of loss under the

12

Policy in reliance on exclusions, conditions, and endorsements which are facially inapplicable to the claim at issue in this case.

56.     Mr. Ellis is therefore entitled to payment by the Defendant of the replacement cost of the Units and the Cooler, including all costs incidental to replacing the Units and the Cooler.

### Count II: Bad Faith

57.     Plaintiff re-pleads and incorporates by reference the allegations of Paragraphs 1 through 56 as if they were set forth verbatim herein.

58.     The Defendant denied, in writing, Mr. Ellis' claim on September 20, 2012, well within sixty (60) days after Mr. Ellis' reported his loss and made a claim under the Policy.

59.     The Defendant asserted endorsement PB 04 30 04 11 as the basis for denial of Mr. Ellis' claim, even though the loss claimed was not caused by either burglary or robbery, and although a "local burglar alarm" securing the Building would not have been triggered by the theft of the Units and the Cooler—outdoor fixtures—because no attempt had been made to enter the Building.

60.     Mr. Ellis filed suit on November 9, 2012, after receiving written notice from Nationwide that his claim was denied.

61.     The Defendant has continued to assert endorsement PB 04 30 04 11 as the basis for its denial of Mr. Ellis' claim.

62.     Section A.1. of the Policy provides that "Covered Property includes Buildings as described under Paragraph a. below, Business Personal Property as described under paragraph b. below, or both, depending on whether a Limit of Insurance is shown in the Declarations for that type of property." (Policy 10.)

13

63.     The Property Declarations issued to Mr. Ellis show a limit of insurance for "Buildings" but not "Business Personal Property."

64.     On its face Section A.1.a. of the Policy describes the scope of "buildings" coverage, which Mr. Ellis purchased by payment of his premiums, as distinct from "business personal property" coverage, which Mr. Ellis did not purchase, but does not define the word building.

65.     By insisting that Section A.1.a. of the Policy defines the term "building" to include outdoor fixtures for purposes of applying endorsement PB 04 30 04 11, the Defendant has knowingly misrepresented a relevant policy provision relating to coverage in violation of Tennessee Unfair Trade Practices and Unfair Claims Settlement Act of 2009, Tennessee Code Annotated § 56-8-105(1).

66.     By insisting that endorsement PB 04 30 04 11 is implicated by simple theft, without regard to the occurrence of a Burglary or Robbery that could be interrupted by operation of a local Burglar alarm, the Defendant has knowingly misrepresented a relevant policy provision relating to coverage in violation of the Tennessee Unfair Trade Practices and Unfair Claims Settlement Act of 2009, Tennessee Code Annotated § 56-8-105(1).

67.     Endorsement PB 04 30 04 11 was added to the Policy upon renewal and without specific notice to Mr. Ellis.

68.     Endorsement PB 04 30 04 11 threatens cancellation of the Policy unless the named insured accepts a "premium reduction" in consideration of maintaining, in Mr. Ellis' case, a "local burglar alarm" in order to reduce the Defendant's risk.

69.     The "premium reduction" described in endorsement PB 04 30 04 11 constitutes a rebate of premiums as inducement to the Policy which the Defendant knowingly offered to give

14

or gave to Mr. Ellis as inducement to the Policy in violation of <u>Tennessee Unfair Trade Practices and Unfair Claims Settlement Act of 2009</u>, <u>Tennessee Code Annotated</u> § 56-8-104(A).

70. Mr. Ellis has incurred substantial costs due to the Defendant's denial of his claim, including the cost of replacing the Units, together with incidental expenses incurred in the course of making such replacement, the loss of use of those funds paid to effect such replacement, the loss of the Cooler, court costs, and attorneys' fees.

71. The Defendant's denial was in bad faith, as evident from the Defendant's violation of the <u>Tennessee Unfair Trade Practices and Unfair Claims Settlement Act of 2009</u> by knowingly misrepresenting the provisions of the Policy and relying upon endorsement PB 04 30 04 11, which itself violates the <u>Tennessee Unfair Trade Practices and Unfair Claims Settlement Act of 2009</u>.

72. Mr. Ellis is therefore entitled to recover additional damages from the Defendant in satisfaction of his claim pursuant to <u>Tennessee Code Annotated</u> § 56-7-105.

### Count III: Punitive Damages

73. Plaintiff re-pleads and incorporates by reference the allegations of Paragraphs 1 through 72 as if they were set forth verbatim herein.

74. The Defendant intentionally or recklessly insinuated endorsement PB 04 30 04 11, offering or effecting a reduction in premiums due on the Policy as inducement to the Policy in violation of the <u>Tennessee Unfair Trade Practices and Unfair Claims Settlement Act of 2009</u>, into the Policy by including endorsement PB 04 30 04 11 into the Policy renewal without any request from or notice to Mr. Ellis and in the expectation that the unrequested endorsement and "benefits" of that endorsement would, or probably would, go unnoticed by him and would serve to reduce the Defendant's risk by limiting the coverage for which Mr. Ellis had bargained when he submitted his application for insurance to American Insurance Exchange, the Defendant's agent.

15

75.     The Defendant intentionally, maliciously, or recklessly identified endorsement PB 04 30 04 11 in the Property Declarations issued to Mr. Ellis as "PB 04 30", rather than its proper designation, PB 04 30 04 11, and intentionally, maliciously, or recklessly described endorsement PB 04 30 11 as imposing conditions upon coverage for losses caused by burglary and robbery, whereas the Defendant's denied Mr. Ellis' claim on the basis that losses caused by *any* theft from the Insured Property is excludable by operation of PB 04 30 04 11.

76.     The Defendant intentionally, fraudulently, maliciously, or recklessly continues to deny Mr. Ellis claim, knowingly misrepresenting various provisions of the Policy as providing for the exclusion of Mr. Ellis' loss from the coverage he has purchased, and on which he has paid premiums for the better part of a decade without making any claim, in breach of the Policy and in violation of the Tennessee Unfair Trade Practices and Unfair Claims Settlement Act of 2009.

77.     Because of the Defendant's intentional, fraudulent, malicious, and reckless misconduct with regard to the alteration of the coverage Mr. Ellis bargained for under the Policy, efforts to fabricate Mr. Ellis' acquiescence to that alterationby premium reduction as inducement to the Policy, and willful misrepresentation of those provisions of the Policy supposedly relevant to coverage for Mr. Ellis' covered losses, all of which constitute egregious misconduct and a distinct threat to other insureds under similar policies of insurance, Mr. Ellis has suffered substantial loss and additional costs in the course of the intervening two years of litigation and is entitled to recover punitive damages from the Defendant.

16

## Prayer for Relief

WHEREFORE Mr. Ellis sues the Defendant, prays that the issues and claims raised by this Amended Complaint be tried to this Honorable Court when joined, and further prays that this Court enter judgment against the Defendant awarding Mr. Ellis:

78.     Fourteen Thousand Three Hundred Sixty-Three and 00/100 Dollars ($14,360.00), the cost incurred by Mr. Ellis for replacement of the damaged HVAC Units;

79.     Eighty-one and 65/100 dollars ($81.65), the cost of other materials purchased by Mr. Ellis in connection with the replacement of the damaged Units;

80.     The replacement cost of the damaged Cooler in an amount to be proved at trial;

81.     A penalty for Defendant's bad faith denial of Mr. Ellis' claim under the Policy, calculated pursuant to Tennessee Code Annotated § 57-7-105;

82.     Two hundred thousand and 00/100 dollars ($200,000.00) in punitive damages;

83.     The Clerk's Costs and other costs associated with this action, including discretionary costs pursuant to Rule 54.04 of the Tennessee Rules of Civil Procedure;

84.     Pre-Judgment interest calculated from September 20, 2012 pursuant to Tennessee Code Annotated § 47-14-123; and

85.     Such other relief as this Court may deem proper.

Submitted,

FLEISSNER DAVIS AND JOHNSON

By: _____

       C. SCOTT JOHNSON, BPR No. 019810
       PATRICK B. HAWLEY, BPR No. 028264
       *Attorneys for Art G. Ellis*
       PO Box 869
       Chattanooga, TN 37401
       Phone: (423) 756-3591

17

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing *Amended Complaint* has been served by facsimile transmission pursuant to Tenn. R. Civ. P. 5.02(1) to counsel below this _____ day of _____, 2014.

Andrew J. Lewis, BPR #028090       By:       _____
*Attorney for Nationwide Mut. Ins. Co.*           C. SCOTT JOHNSON
P.O. Box 51450                                                PATRICK B. HAWLEY
Knoxville, TN 37950
(865) 330-2577 (phone)
(865) 330-2578 (fax)
andrewlewis@tawpc.com