UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| ART G. ELLIS, | ) |
| *Plaintiff*, | ) |
| | ) Case No. 1:14-cv-323 |
| v. | ) |
| | ) Judge Mattice |
| NATIONWIDE MUTUAL INSURANCE COMPANY, | ) |
| *Defendant*. | ) |

## ORDER

Before the Court is Plaintiff's Motion to Remand. (Doc. 5). For the reasons set forth herein, the Court will **GRANT IN PART** and **DENY IN PART** the Motion. This action will be **REMANDED** to the Circuit Court for Bradley County, Tennessee. However, Plaintiff is not entitled to recover attorneys' fees and costs from the removing Defendant.

### I. BACKGROUND

The procedural history of this action in state court is undisputed by the parties. On November 9, 2012, Plaintiff Art Ellis commenced a *pro se* civil action in Bradley County General Sessions Court (hereinafter, "Sessions Court") against Nationwide Mutual Insurance Company (hereinafter, "Nationwide"). Plaintiff sought a judgment in the amount of $14,360.00 for failure to pay under Plaintiff's insurance policy with Defendant for the theft of an air conditioning and refrigeration unit from Plaintiff's property. A trial was held in Sessions Court on May 13, 2013; Defendant obtained a judgment against the *pro se* Plaintiff, whose action was dismissed.

Plaintiff thereafter filed a timely *pro se* notice of appeal to the Circuit Court pursuant to Tenn. Code Ann. § 27-5-108; Plaintiff was thereafter able to obtain counsel. On October 20, 2014, after the parties had engaged in discovery and filed unsuccessful cross motions for summary judgment, Plaintiff filed a motion to amend his complaint with the Circuit Court. Plaintiff's proposed amended complaint included claims for punitive damages and bad faith, and it sought damages in excess of $214,000.00. Plaintiff has stated that he sought to amend his complaint in order to add these claims partly based on "Nationwide's preference for two years of costly litigation rather than pay the claim[.]" (Doc. 8 at 3; *see* Doc. 8-5 at 18). At a hearing on November 10, 2014, the Circuit Court ruled that Plaintiff could file his amended complaint.

However, on November 13, 2014, Defendant removed the action to this Court, alleging diversity jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are of diverse citizenship and the amount in controversy exceeds the jurisdictional limit.[1] (Doc. 1 at 1-2). Defendant also alleged that removal was timely pursuant to 28 U.S.C. § 1446(b) because it was filed within 30 days of "the filing of the Motion to Amend." (*Id.* at 2). The Circuit Court has yet to file an order on its oral ruling granting Plaintiff's Motion to Amend; thus, Plaintiff has not yet filed his amended complaint in state court.

On December 14, 2014, Plaintiff filed this instant Motion to Remand. (Doc. 5). In his supporting memorandum, Plaintiff argues that diversity jurisdiction was lacking at the time of removal, as his Amended Complaint had not yet been filed and the amount in controversy in his original Complaint was well-below the jurisdictional threshold. (Doc. 6 at 4-5). Plaintiff also argues that Defendant's removal was untimely under 28 U.S.C. § 1446(c), as it was filed more than two years after the action was

---

[1] The parties do not dispute that they are diverse citizens for the purposes of 28 U.S.C. § 1332.

commenced. (*Id*.at 5-6). Plaintiff further argues that Defendant has failed to allege any bad faith on behalf of Plaintiff that would allow for tolling or enlargement of the time for removal pursuant to § 1446(c). (*Id.* at 7-8). Plaintiff alternatively argues that this Court should decline to exercise jurisdiction because doing so would usurp the appellate authority of Tennessee's state courts. (*Id.* at 8-9). Finally, Plaintiff argues that the removal was objectively unreasonable and that Defendant should accordingly be ordered to Plaintiff's attorneys' fees and costs related to the wrongful removal and remand of this action. (*Id.* at 9-10).

Defendant has responded in opposition to Plaintiff's Motion. (Doc. 10). Specifically, it argues that removal was proper pursuant to 28 U.S.C. § 1446(b)(3) as it was filed within 30 days after Defendant received notice that the case was removable – that is, within 30 days of the date that Plaintiff filed his Motion to Amend in state court, alleging an amount in controversy in excess of the federal minimum. (*Id.* at 2). Defendant also argues that Plaintiff's failure to put Defendant on notice that the amount in controversy exceeded $75,000.00 prior to October 17, 2014 constitutes bad faith under § 1446(c). (*Id.* at 2-6). Defendant further argues that, contrary to Plaintiff's assertion, the Court's exercise of jurisdiction over this matter does not interfere with any judgment by or pending appeal in Tennessee state court. (*Id.* at 6-7). Finally, Defendant contends that Plaintiff's request for attorneys' fees should be denied regardless of whether the Court grants Plaintiff's Motion to Remand because there was at least some arguable basis supporting removal in existing law. (*Id.* at 7-8).

Plaintiff did not file a reply brief, and his Motion is now ripe for the Court's review.

3

## II. ANALYSIS

Removal from state court is governed by 28 U.S.C. § 1446, which states in pertinent part:

> A defendant or defendants desiring to remove any civil action or criminal prosecution from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.

28 U.S.C. § 1446(a). A plaintiff may seek remand based either on the Court's lack of subject matter jurisdiction or on "any defect other than lack of subject matter jurisdiction." 28 U.S.C. § 1447(c). "[A]ll doubts as to the propriety of removal are resolved in favor of remand." *See Smith v. Nationwide Prop. & Cas. Ins. Co.*, 505 F.3d 401, 405 (6th Cir. 2007) (citation and internal quotation marks omitted).

In this case, Plaintiff has challenged Defendant's removal on both jurisdictional and procedural grounds and has also requested that he be awarded attorneys' fees and costs. The Court will first address Plaintiff's jurisdictional challenge and will then turn to Plaintiff's other arguments.

### A. Subject Matter Jurisdiction

28 U.S.C. § 1441 provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). The original jurisdiction of the federal courts includes jurisdiction over diversity actions – that is, those "civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different

4

States[.]" 28 U.S.C. § 1332(a). When a case is removed to federal court, the removing party bears the burden of demonstrating federal jurisdiction. *Warthman v. Genoa Twp. Bd. of Tr.*, 549 F.3d 1055, 1061 (6th Cir. 2008).

Generally, an action must be removed within 30 days of service of the initial pleading. 28 U.S.C. § 1446(b)(1). However, if the initial complaint is not removable to federal court, "a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). The statute clarifies that "[i]f the case stated by the initial pleading is not removable solely because the amount in controversy does not exceed the amount specified in section 1332(a), information relating to the amount in controversy in the record of the State proceeding, or in responses to discovery, shall be treated as an 'other paper' under subsection (b)(3)." 28 U.S.C. § 1446(c)(3)(A).

The Court finds that Defendant has met its burden of establishing federal diversity jurisdiction for the purposes of removal. Plaintiff's initial pleading, which sought less than $15,000.00 in relief, was not removable at the time it was filed on November 9, 2012. On October 20, 2014, however, Plaintiff filed a motion to amend that pleading, along with a proposed amended complaint which added additional claims and requested over $200,000.00 in damages. At that point, this action became removable, as Plaintiff's motion demonstrated – for the first time – that all of the requirements for diversity jurisdiction were met. Moreover, the state court granted Plaintiff's motion to amend on November 10, 2014; any argument that Plaintiff's action was not removable based solely on the filing of his motion to amend was rendered moot

5

when that motion was granted by the state court. Accordingly, the Court finds that it has diversity jurisdiction over this action, as the parties are diverse and the papers demonstrate that the amount in controversy exceeds the $75,000.00 jurisdictional floor, and the Court will **DENY** Plaintiff's Motion to Remand (Doc. 5) on this ground.

### B. Procedural Deficiency

Even when the defendant has proven the existence of jurisdiction justifying removal, the Court must consider whether any alleged technical defects in the removal warrant remand. 28 U.S.C. § 1447(c) (providing for remand where a plaintiff makes a timely challenge to a non-jurisdictional defect in the removal). As previously noted, "a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). However, in cases removed pursuant to the Court's diversity jurisdiction, a strict one-year time limitation applies to removal. 28 U.S.C. § 1446(c)(1); *see, e.g., Mitchell v. Lemmie*, 231 F. Supp. 2d 693, 697 (S.D. Ohio 2002) (citing *Seaton v. Jabe*, 992 F.2d 79, 81 (6th Cir. 1993) for the proposition that the time requirements for removal are "strictly applied" procedural rules). In relevant part, 28 U.S.C. § 1446(c) provides that "[a] case may not be removed under subsection (b)(3) on the basis of [diversity jurisdiction] more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C. § 1446(c)(1). A plaintiff can manifest bad faith triggering this exception by "deliberately fail[ing] to disclose the actual amount in controversy to prevent removal[.]" 28 U.S.C. § 1446(c)(3)(B).

6

In the instant case, Defendant does not dispute that its removal – filed on November 13, 2014 – was filed more than one year after this action was commenced on November 9, 2012. Rather, Defendant argues that Plaintiff's action of amending his complaint to raise the claim for relief above the federal jurisdictional threshold almost two years after commencing his lawsuit constitutes bad faith, thereby triggering the exception to the one-year limitation in § 1446(c)(1).

The "bad faith exception" was added to 28 U.S.C. § 1446(c)(1) in 2011. The Sixth Circuit has not clearly defined the meaning of "bad faith" in the amended statute. Other federal courts that have, however, considered the issue have consistently found that the statutory language requires district courts to focus on the "intentionality and purpose" of the plaintiff's actions in regards to preventing removal in order to determine whether plaintiff acted "deliberately" under the statute. *See, e.g.*, *Aguayo v. AMCO Ins. Co.*, 59 F. Supp. 3d 1225, 1266 (D.N.M. 2014); *Hiser v. Seay*, 2014 WL 6885433, at *4 (W.D. Ky. Dec. 5, 2014) (finding that bad faith exception is procedural, rather than jurisdictional); *Ehrenreich v. Black*, 994 F. Supp. 2d 284 (E.D.N.Y. 2014) (discussing the statutory language and finding that the bad faith exception was not met because the plaintiffs actively litigated their action during the relevant one-year period and were not shown to have taken any actions specifically intended to prevent removal); *Taylor v. King*, 2012 WL 3257528 at *4 (W.D. Ky. Aug. 8, 2012) ("[T]here is no basis for concluding that Plaintiffs' tactic in waiting to assert their bad faith claim against [a defendant] was employed specifically to defeat diversity jurisdiction."). Several courts have found evidence of such intentionality where the plaintiff's amendment increasing the amount in controversy above the federal jurisdictional limitation is sought shortly after the expiration of the removal period. *See Hill v. Allianz Life Ins. Co. of N. Am.*, 51

7

F. Supp. 3d 1277, 1282 (M.D. Fla. 2014) (finding bad faith where plaintiff amended his complaint without rationale "just over three months after the one year removal window had run"); *Cameron v. Teeberry Logistics, LLC*, 920 F. Supp. 2d 1309, 1316 (N.D. Ga. 2013) (finding that plaintiff acted in bad faith based in part of plaintiff's increase of the amount in controversy in a "time-limited demand letter exactly one year and four days after commencement of th[e] suit").

Although no court to date has specifically articulated such a standard, the Court finds that a defendant should bear the burden of persuasion as to a plaintiff's bad faith with regards to an increase in the amount in controversy that makes the case removable after one year.[2] The Court so finds because the removing party bears the burden of proof as to other aspects of removal – such as jurisdiction – and because all doubts as to the propriety of removal are generally resolved in favor of remand. In considering whether a defendant has met this burden, the Court will consider any direct and circumstantial evidence of the plaintiff's intention in increasing the jurisdictional

---

[2] The district court in *Aguayo* articulated a two-step standard for evaluating the bad faith exception:

> First, the Court must inquire whether the plaintiff actively litigated against the removal spoiler in state court: asserting valid claims, taking discovery, negotiating settlement, seeking default judgments if the defendant does not answer the complaint, et cetera. Failure to actively litigate against the removal spoiler will be deemed bad faith; actively litigating against the removal spoiler, however, will create a rebuttable presumption of good faith. Second, the defendant may attempt to rebut this presumption with evidence already in the defendant's possession which establishes that, despite the plaintiff's active litigation against the removal spoiler, the plaintiff would not have named the removal spoiler or would have dropped the spoiler before the one-year mark but for the plaintiff's desire to keep the case in state court. The defendant may introduce direct evidence of the plaintiff's bad faith at this stage—*e.g.,* electronic mail transmissions in which the plaintiff states that he or she is only keeping the removal spoiler joined to defeat removal—but will not receive discovery or an evidentiary hearing in federal court to obtain such evidence.

*Leberton*, 2015 WL 2226266, at *28 (citing *Aguayo*, 59 F. Supp. 3d 1225). However, as is readily clear from the substance of this standard, the crux of the Court's decision in *Aguayo* was focused on the applicability of the bad faith exception in cases where fraudulent joinder has been alleged. The Court here finds that *Aguayo* court's two-step burden shifting analysis is unworkable in cases involving an increase in the amount in controversy beyond the one-year removal limitation and accordingly declines to adopt that standard.

8

amount. As previously discussed, relevant factors include, but are not limited to, the timing of plaintiff's increased demand, plaintiff's stated rationale, if any, for both the increase and the timing of the increase, and whether plaintiff has actively litigated his case throughout the one-year removal window.

In this case, the Court agrees with Defendant that Plaintiff's dramatic increase in his claim for relief – from approximately $14,000.00 to over $200,000.00 – almost two years after instituting his action is somewhat suspicious; however, under the circumstances, the Court does not find that Defendant has presented sufficient evidence for it to conclude that Plaintiff's amendment was deliberately calculated to frustrate removal. A number of relevant facts have led the Court to this conclusion. First, the timing of the increase in the amount in controversy was not so close in time to the expiration of Defendant's removal period so as to raise a presumption of bad faith. Defendant's one-year limit on removal pursuant to § 1446(c)(1) expired on November 9, 2013; Plaintiff did not, however, file his motion to amend increasing the amount of his demand until October 20, 2014, almost a full year after the expiration of the one-year removal period. This is a far cry from the several days or months that have previously been found to be evidence of intentionality; without further direct or circumstantial evidence of intentionality with respect to the timing of the amendment, the Court finds that the timing factor weighs against a finding that Plaintiff acted in bad faith.

Next, Plaintiff's litigation of this action weighs against a finding of bad faith. Plaintiff initially proceeded *pro se* in this action for more than seven month of its pendency. Plaintiff was then able to obtain a lawyer, who aided with discovery and the filing of motions. It is reasonable to conclude that counsel, after acquainting himself with the ongoing litigation and his client's previous *pro se* efforts, made a decision to

9

raise additional claims and seek additional relief. Such decisions would be based on counsel's professional knowledge and experience, which Plaintiff would not have had the benefit of while proceeding in a *pro se* capacity in the early stages of this litigation – including the majority of the Defendant's one-year removal period. Additionally, Plaintiff's case was actively litigated by *pro se* Plaintiff and then by counsel, throughout the relevant one-year period and beyond, and such active litigation weighs against a finding of impermissible "gamesmanship" by Plaintiff. *See Ehrenreich*, 994 F. Supp. 2d at 288-89.

Finally, Plaintiff, unlike the plaintiffs in some other cases finding bad faith, did offer a rationale for his request to amend his complaint to add a request for punitive damages. In fact, the rationale stated in both Plaintiff's proposed amended complaint and his instant filings is that Defendant's actions throughout the course of litigation in state court formed part of the basis for his claims for bad faith failure to pay on the insurance policy and for punitive damages. Thus, it does not appear that the timing and fact of Plaintiff's amendment was specifically orchestrated to defeat removal, but rather, was based on the evolving nature of this action.

After fully considering the circumstances surrounding Plaintiff's amended complaint, the Court finds no compelling evidence that it should apply the bad faith exception in the instant case. Because the bad faith exception is not applicable, Defendant's notice of removal was untimely under § 1446(c)(1), and this action is thus subject to remand. Accordingly, the Court will **GRANT IN PART** Plaintiff's Motion (Doc. 5) to the extent that it seeks remand.

### C. Attorneys' Fees and Costs

Plaintiff has asked the Court to impose attorneys' fees and costs on Defendant in the event that it grants his Motion to Remand. The Supreme Court has affirmed that the standard for awarding such fees "should turn on the reasonableness of the removal," and more specifically that, "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

Here, the Court finds that Defendant's removal was objectively reasonable. As discussed *supra*, the bad faith exception to the one-year removal period is a relatively new addition to federal law, and very little law exists regarding its interpretation and application. Given the dramatic increase in the value of Plaintiff's request relief almost two years after the case was commenced, which created federal diversity jurisdiction for the first time, it was not objectively unreasonable for Defendant to seek removal beyond the one-year window and argue that it was entitled to refuge in the bad faith exception. That the Court has now ruled in Plaintiff's favor as to the propriety of remand does not invalidate Defendant's objectively reasonable strategic decision to seek removal based on an unsettled area of law. *See Aguayo*, 59 F. Supp. 3d at 1285 (finding that defendant's removal was objectively reasonable – and that assessment of costs was therefore unwarranted – because no court had "yet attempted to define the bad-faith exception," but noting that "[i]n the future, as the bad-faith exception develops some much-needed clarity and standardization, the Court may be inclined to grant costs and expenses[.]"). Finding no other unusual circumstances which would warrant an award
11

of fees and costs for Plaintiff, the Court will **DENY** Plaintiff's Motion to the extent that it seeks the same.

### III. CONCLUSION

For the reasons set forth above, the Court hereby **GRANTS IN PART** Plaintiff's Motion (Doc. 5) to the extent that it seeks remand, but **DENIES IN PART** Plaintiff's Motion to the extent that it seeks an award of attorneys' fees and costs. This action is hereby **REMANDED** to the Circuit Court for Bradley County, Tennessee. The Clerk of this Court is hereby **DIRECTED** to transmit the files in this case to the Clerk of Court for the Circuit Court for Bradley County, Tennessee.

**SO ORDERED** this 30th day of July, 2015.

*/s/ Harry S. Mattice, Jr.*
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE